**WITHERS BERGMAN LLP**
John A. Farnsworth (CT20705)
157 Church Street, 19th Floor
New Haven, CT 06510
203-974-0353 (p)
203-285-1653 (f)
*Attorney for Brain Tunnelgenix Technologies Corp.*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
BRAIN TUNNELGENIX
TECHNOLOGIES CORP.

        Plaintiff,

-against-

FREDERICK L. WU,

        Defendant.
---------------------------------------------------------x

No. **3:11 CV 00690**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## PARTIES

1. Plaintiff Brain Tunnelgenix Technologies Corp. f/k/a EterLink International Corporation (the "Company"), is a Delaware corporation with a principal place of business in Hamden, New Haven County, Connecticut.

2. Frederick L. Wu ("Wu") is an individual residing in the City of San Ramon, Contra Costa County, California.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because of the diversity between parties and the amount in controversy exceeds $75,000.

4.  Venue is proper as the District of Connecticut is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

### First Count – Breach of Fiduciary Duty

5.  Plaintiff repeats and realleges paragraphs 1 through 4 as if fully set forth herein.

6.  M. Marc Abreu, M.D. ("Abreu") is the Chief Science Officer of the Company and is also a member of its Board of Directors.

7.  Abreu is a physician, ophthalmologist, anesthesiologist and physicist with degrees from Yale University and Harvard University and is currently on clinical faculty at Yale School of Medicine, Department of Anesthesiology.

8.  Abreu is responsible for the discovery of the Brain Temperature Tunnel, a direct and undisturbed connection between the thermal storage area in the brain and the surface of the skin at the inner corner of the eye.

9.  Abreu spent more than a decade identifying means to measure brain temperature and researching areas around the eye and orbit, focusing on measuring the slower moving blood which lies in the sinus of the brain (as opposed to arterial blood).

10. The discovery of the Brain Temperature Tunnel offers the potential of new diagnostic and therapeutic possibilities in thermometry, which has not advanced in more than 300 years.

11. For this work, the United States Patent and Trademark Office issued Dr. Abreu a biological discovery patent, U.S. Patent 7,187,960, for which the Company has exclusive rights.

document number: GW00175/0002-US-1096616/2

12. This patent is unique in that it includes discovery of an organ in the human body and couples biological discovery with device and methods to measure biologic parameters.

13. Any "support structure" pointing to or adjacent to the Brain Temperature Tunnel site is protected by this patent.

14. The Company has developed three systems designed to record body temperature:

    a. a continuous system (as a stand-alone unit) designed for hospital use of continuous temperature monitoring, internally referred to as the "white box";

    b. a computer-based sensing system suitable for continuous or spot-check temperature monitoring for medical, home and academic use; and

    c. a wireless eyeglass temperature monitoring system.

15. Wu was named to the Company's Board of Directors on or about March 15, 2006.

16. Shortly thereafter, Wu was appointed as a Vice President of the Company by written consent of the Company's Board of Directors.

17. In his role as a member of the Board of Directors and an officer of the Company, Wu owed certain fiduciary duties to the Company and its stockholders, including a duty of obedience, a duty of care and a duty of loyalty. In particular, Wu was obligated:

    a. to act solely in the best interests of the Company rather than in his own interests;

    b. to retain the confidentiality of information that was deemed confidential or proprietary by the Company, as well as information that appeared to be confidential from its nature or matter;

3

    c. to disclose conflicts of interest, particularly with regard to transactions between the Company and other entities in which Wu was a director, officer, trustee, employee, consultant, or agent or in which he had a financial interest; and

    d. to keep any confidential and proprietary information obtained as a result of his position with the Company confidential and to use it only to advance the interests of the Company and its stockholders.

18. At the time of Wu's initial involvement with the Company, Wu introduced Trade Dimensions Limited ("Trade Dimensions") to the Company. Trade Dimensions invested in the Company and became a stockholder in the Company.

19. Wu not only failed to disclose that he was a principal and controlling shareholder in Trade Dimensions, but, upon information and belief, acted to affirmatively conceal these facts.

20. Wu's failure to disclose and/or his concealment of his relationship with Trade Dimensions constitute a breach of his fiduciary obligations to the Company.

21. Prior to Wu's involvement with the Company, the Company had begun development of Brain Temperature Tunnel thermometry hardware and software technology ("BTT Technology").

22. As an officer of the Company, Wu was given access to confidential and proprietary information regarding the BTT Technology and was involved with decisions regarding the development of the BTT Technology.

23. In 2006, the Company sought pricing quotes from Maximum Performance Systems for hardware and software development services with respect to the BTT Technology.

4

24. Wu represented to the Company that Data Mark, Inc. d/b/a Deltatrak Technologies ("DeltaTrak") could provide the same hardware and software services to the Company at a lower cost.

25. Based on Wu's representation, the Company chose not to retain Maximum Performance Systems and failed to act on a good business opportunity.

26. Wu, however, failed to disclose that he was a principal and controlling shareholder in DeltaTrak and, as a result, breached his fiduciary duties to the Company.

27. The Company engaged Deltatrak to perform certain hardware and software development services, although to the Company's knowledge no formal written agreement was ever entered into.

28. Wu has recently claimed that he, on behalf of the Company, entered into a written agreement with Deltatrak.

29. Any such "agreement", if it exists, is void or voidable because it was made without board approval, without disclosure to the Company and in violation of Wu's fiduciary duties to the Company.

30. Wu derived an improper personal financial benefit as a result of the provision of services by DeltaTrak to the Company.

31. As a result of Wu's position within the Company and Deltatrak's engagement, Wu received BTT Technology and other trade secrets, including the "white box", BTT molds, sensors, a Thermo Feedback Mini Bed, a Radio Transmitter, a BTT Pen, plans, schematics and other documentation related to this technology, and proprietary vendor and supplier information.

32. Wu disclosed this BTT Technology to Deltatrak without having obtained a confidentiality agreement and covenant from DeltaTrak to protect the Company from the potentially harmful disclosure of its confidential and proprietary information.

33. Wu breached his fiduciary duties to the Company by failing to protect and by improperly disclosing confidential and proprietary information of the Company, and, upon information and belief, misappropriating some or all of the same for his own personal benefit.

34. Moreover, the initial documentation produced by DeltaTrak for the BTT Technology listed DeltaTrak's name as the owner, not the Company's name.

35. The Company requested that Wu ensure that all documentation reflect the Company's name as the owner of the BTT Technology.

36. Wu ignored the Company's request and allowed documentation for the BTT Technology to erroneously reflect that they were DeltaTrak products.

37. Wu's actions constitute a breach his fiduciary duties to the Company.

38. In connection with the development of the BTT Technology, Wu also engaged the services of Gold Step International Limited ("Gold Step"), a Chinese company, to perform certain manufacturing services for the Company.

39. Wu failed to disclose that he had a substantial financial interest in Gold Step.

40. Wu further failed to disclose that Deltatrak was an affiliated company of Gold Step.

41. It was expressly understood by all parties that all related BTT drawings, schematics, associated documentation, computer programs, software and molds and other intellectual property prepared by Gold Step belonged to the Company.

6

42. Wu similarly failed to obtain a confidentiality agreement and covenant from Gold Step protecting the Company from potentially harmful disclosure of its confidential and proprietary information as a result of Gold Step's involvement.

43. Wu again breached his fiduciary duties to the Company by failing to protect confidential and proprietary information of the Company and by improperly disclosing the same.

44. Wu also solicited other companies to provide manufacturing and development services, including Deltatrak in Japan, another company in which Wu has a financial interest, and certain undisclosed Japanese companies.

45. Upon information and belief, Wu provided confidential and proprietary information belonging to the Company to other potential suppliers (domestic and international) without obtaining appropriate confidentiality agreements.

46. Wu repeatedly breached his fiduciary duties to the Company by disclosing its confidential and proprietary information to third parties without first obtaining appropriate confidentiality agreements.

47. During the period that Wu held an officership and directorship with the Company, Deltatrak, using the Company's confidential and proprietary information, developed the BTT-2000 electronic device and the BTT Sensor assembly to be used with the BTT-2000 (the "BTT Products").

48. In October, 2008, Wu asked the Company to confirm that he had the exclusive rights to manufacture the BTT 2000 and the BTT Sensor, to develop the wireless and webhosting application for the BTT 2000 system, and to develop and integrate the vital sign system to the BTT 2000.

document number: GW00175/0002-US-1096616/2

49. Wu further offered to sell to the Company complete design drawings, software codes, injection molding tools, bill of material, validation and materials test data and 50 units of BTT 2000 instruments and 500 BTT functional sensor assemblies ready for use in clinical trial applications in exchange for 200,000 shares of the Company's common stock to be issued to Deltatronix, Inc.

50. Wu failed to disclose his financial interest in Deltatronix, Inc.

51. Upon information and belief, Deltatronix, Inc. is owned by an offshore company in which Wu has a financial interest.

52. While the BTT Products were in the possession of DeltaTrak, Wu and DeltaTrak had no ownership rights as these items belonged to the Company.

53. Wu breached his fiduciary duties to the Company by asserting ownership rights to Company property, including BTT Technology and the BTT Products, and then attempting to sell the Company back its own property.

54. Recently, the Company has discovered that in 2008 or earlier, Wu transferred all work on BTT projects from Deltatrak to Deltatronix, Inc. but continued to represent to the Company that Deltatrak was performing such services.

55. Wu never sought approval from the Company to have Deltatronix, Inc. perform any services for the Company.

56. By disclosing without authorization confidential and proprietary information to Deltatronix, Wu jeopardized the Company's intellectual property, reduced the value of such intellectual property, and reduced the market value of the Company.

document number: GW00175/0002-US-1096616/2

57. Wu breached his fiduciary duties to the Company by failing to protect confidential and proprietary information of the Company and by improperly disclosing the same to Deltatronix, Inc.

58. Wu further breached his fiduciary duties to the Company by misrepresenting Deltatrak's involvement with Company projects and failing to disclose Deltatronix, Inc.'s involvement.

59. Wu further breached his fiduciary duties to the Company by acting in his own self-interest and adversely to the Company's interests.

60. Also in late 2008, Wu and Abreu discussed the need for the Company to seek FDA approval of the BTT Products.

61. Unbeknownst to Abreu or the Company, Wu thereafter prepared and submitted a 510(k) application to the FDA for the BTT Products in the name of Entracare, LLC.

62. The 510(k) application requires submission of technical data, plans, and specifications for all components of a medical device.

63. By its very nature, the information contained in the 510(k) application for the BTT Products constituted confidential and proprietary information of the Company.

64. Wu breached his fiduciary duties to the Company by failing to protect confidential and proprietary information of the Company and by improperly disclosing the same.

65. The Company later learned that Wu had a financial interest in Entracare, LLC, which he failed to disclose.

66. When the Company learned of Wu's FDA application, it demanded that Wu withdraw the application.

document number: GW00175/0002-US-1096616/2

67. In response, Wu claimed ownership of the BTT Products and sought the right to be the sole manufacturer of BTT Products.

68. Wu further demanded that Entracare, LLC be given exclusive distributorship rights for the BTT Products.

69. Wu offered to transfer all rights in the BTT Products to the Company in exchange for 200,000 shares of the Company's common stock.

70. Wu's 510(k) application for the BTT Products on behalf of Entracare, LLC rather than the Company, his claim to ownership of the BTT Products, his demand for exclusive manufacturing rights, his demand for exclusive distributorship rights for Entracare, LLC, and his unwarranted demands for payment of common stock, individually and as a whole constitute multiple breaches of Wu's fiduciary duties to the Company.

71. As a result of Wu's position as an officer and director of the Company, he obtained substantial confidential and proprietary information of the Company.

72. In that guise, Wu also solicited the Company to engage third parties, such as DeltaTrak and Gold Step, to perform software and hardware development on the BTT Products.

73. As a result, Wu and entities in which he had a financial interest came to possess additional intellectual property of the Company, such as the BTT Technology, production molds, component specifications, design drawings, test data, software codes, and prototypes (collectively, the "BTT Product Technical Data").

74. Wu utilized this BTT Product Technical Data to prepare the 510(k) application he submitted on behalf of Entracare, LLC.

75. Wu has refused to disclose this same BTT Product Technical Data to the Company, its rightful owner.

76. As a result of this refusal and Wu's claim of ownership of the BTT Products, the Company was unable to continue development and production of the BTT Products.

77. Rather than engaging in protracted and costly litigation to resolve Wu's claim of ownership over the BTT Products, the Company engaged other companies, including Titronics Research & Development Company, led by Roger Titone, to develop a new body temperature recording device.

78. Titone had been previously engaged by the Company to develop the BTT Technology prior to Wu's involvement with the Company.

79. The Company, with Titone's assistance, was able to develop new BTT Technology for FDA approval.

80. Wu's actions, however, resulted in the Company having to expend an additional $400,000 to $500,000 to develop new BTT Technology and delayed the Company's ability to seek FDA approval of these products.

81. As a result of Wu's improper disclosures of confidential and proprietary information and Wu's improper claims of ownership that resulted in delays in the Company bringing the Company's devices to the marketplace, the Company may further be damaged by the introduction into the marketplace of competitor products developed using such confidential and proprietary information.

82. As a result of Wu's actions, the Company is at risk for losing its competitive market advantage by having its confidential and proprietary information disclosed to foreign

document number: GW00175/0002-US-1096616/2

markets, such as China, leaving the Company completely unprotected in that jurisdiction and exposing the Company to the potential disclosure of its intellectual property and trade secrets to a worldwide audience.

83. As an officer and director, Wu owed fiduciary duties to the Company, including duties of loyalty and care.

84. With regard to Wu's duty of loyalty, Wu was obligated to avoid conflicts of interest and to act in good faith to promote the success of the Company.

85. As set forth above, Wu breached his duty of loyalty to the Company by, *inter alia*, the following:

   a. Failing to act in the best interests of the Company by engaging in self-interested transactions with the Company;

   b. Failing to disclose fully his financial interests, direct or indirect, in transactions with the Company;

   c. Self-dealing;

   d. Using for his own profit the Company's assets, opportunities, or information;

   e. Diverting corporate assets;

   f. Usurping corporate property, opportunity, and/or information; and

   g. Failing to act to protect the confidential and proprietary information of the Company with which he was entrusted.

86. As a result of Wu's breaches of his fiduciary duties, the Company has suffered financial harm in excess of $400,000.

document number: GW00175/0002-US-1096616/2

## Second Count – Conversion

87. Plaintiff repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

88. The BTT Technology, BTT Products, BTT Technical Data, BTT Product Technical Data and Company confidential and proprietary information belong to the Company.

89. Wu took possession of and/or exercised control over the Company's property and has deprived the Company of the same.

90. Wu's conduct was without authorization by the Company, without the Company's permission and without any other lawful authority.

91. Wu's conduct has caused financial harm to the Company.

## Third Count – Statutory Theft – Conn. Gen. Stat. § 52-564

92. Plaintiff repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

93. Statutory or civil theft is synonymous with "larceny."

94. Conn. Gen. Stat. § 53a-119 defines that a person commits larceny "when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." The statute identifies the specific offenses of embezzlement (when a person "wrongfully appropriates to himself or to another property of another in his care or custody") and false pretenses (when a person "by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person") as included within the definition of larceny.

95. Wu's misappropriation of Company assets, namely the BTT Technology, BTT Products, BTT Technical Data, BTT Product Technical Data and Company confidential and proprietary information constitutes theft, embezzlement and/or appropriation by false pretenses.

96. As a result, Wu is liable to the Company for statutory theft, including treble damages and common law punitive damages.

## Fourth Count – Replevin

97. Plaintiff repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

98. The Company owns and has a right to immediate possession of the BTT Technology, BTT Products, BTT Technology Data, BTT Product Technical Data, design drawings, software codes, injection molding tools, bill of material, validation and materials test data, BTT 2000 instruments, BTT functional sensor assembly, and other prototype materials.

99. Wu is in possession and/or control of such Company property, which he has wrongfully detained from the Company.

100. The Company is entitled to the replevin of all Company goods & chattels within Wu's possession and/or control.

## Fifth Count – Tortious Interference with Business Opportunity

101. Plaintiff repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

102. The Company had a legitimate business opportunity or expectancy in the marketing, development and sale of the BTT Technology, BTT Products, BTT Technical Data and BTT Product Technical Data.

14

103. Wu had knowledge of this business opportunity and expectancy following, at a minimum, his discussions with Abreu regarding the same and as a result of having access to the same by being an officer and director of the Company.

104. By making an improper claim of ownership to the BTT Technology, BTT Products and by seeking FDA approval of the BTT Products through Entracare, LLC, Wu intentionally interfered with this business opportunity or expectancy in breach of his fiduciary duties and for his own financial gain.

105. The Company was harmed by Wu's tortious interference with the Company's business opportunities and expectancies by having to expend $400,000 to $500,000 to develop new BTT Technology and by the resultant delays in seeking FDA approval of this new technology.

document number: GW00175/0002-US-1096616/2

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff claims:

1. Actual, compensatory and consequential damages in an amount to be determined according to the evidence;

2. Disgorgement of all profits received by Wu, directly or indirectly through entities in which he has a financial interest, that relate to Wu's misappropriation of confidential and proprietary information of the Company and/or his breach of fiduciary duties to the Company.

3. Interest and costs; and

4. Such other legal or equitable relief as this Court deems proper.

5. Punitive and exemplary damages where authorized by law;

6. Pre-judgment and post-judgment interest at the legal rate where authorized by law;

7. Reasonable attorneys' fees to the extent permitted by law; and

8. Such other and further relief as the Court deems just and proper.

document number: GW00175/0002-US-1096616/2

## **Demand for Trial by Jury**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: April 29, 2011

            WITHERS BERGMAN LLP


          By:_____/s/_____
            John Farnsworth (CT20705)
            157 Church Street, 19th Floor
            New Haven, CT 06510
            (p) (203) 253-5497
            (f) (203) 285-1653
             Attorneys for Plaintiff Brain Tunnelgenix
             Technologies Corp.